RENDERED: DECEMBER 15, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2021-SC-0518-TG
## (2021-CA-1320)

COMMONWEALTH OF KENTUCKY EX
REL. ATTORNEY GENERAL DANIEL
CAMERON

APPELLANT

ON APPEAL FROM FRANKLIN CIRCUIT COURT

V.             HON. PHILLIP J. SHEPHERD, JUDGE
NO. 21-CI-00461

HOLLY M. JOHNSON, IN HER
OFFICIAL CAPACITY AS SECRETARY
OF THE FINANCE AND
ADMINISTRATION CABINET; AKIA
MCNEARY; CHRIS RASHEED, ON
BEHALF OF HIMSELF AND HIS
MINOR CHILD; COUNCIL FOR
BETTER EDUCATION, INC.;
FRANKFORT INDEPENDENT SCHOOL
BOARD; KATHERINE WALKER-
PAYNE, ON BEHALF OF HERSELF
AND HER MINOR CHILDREN;
MICHELLE GRIMES JONES, ON
BEHALF OF HERSELF AND HER
MINOR CHILDREN; NANCY DEATON;
THE BOARD OF EDUCATION OF THE
AUGUSTA INDEPENDENT SCHOOL
DISTRICT; THE BOARD OF
EDUCATION OF THE BOWLING
GREEN INDEPENDENT SCHOOL
DISTRICT; THE BOARD OF
EDUCATION OF THE CORBIN
INDEPENDENT SCHOOL DISTRICT;
THE BOARD OF EDUCATION OF THE
PAINTSVILLE INDEPENDENT SCHOOL
DISTRICT; THE BOARD OF
EDUCATION OF THE PINEVILLE

APPELLEES

INDEPENDENT SCHOOL DISTRICT;
THE BOARD OF EDUCATION OF THE
RACELAND WORTHINGTON
INDEPENDENT SCHOOL DISTRICT;
THOMAS B. MILLER, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF
THE KENTUCKY DEPARTMENT OF
REVENUE; AND WARREN COUNTY
SCHOOL BOARD

AND

2021-SC-0519-TG
(2021-CA-1323)

COUNCIL FOR BETTER EDUCATION,                    APPELLANTS
INC.; FRANKFORT INDEPENDENT
SCHOOL BOARD; AND WARREN
COUNTY SCHOOL BOARD

ON APPEAL FROM FRANKLIN CIRCUIT COURT
V.            HON. PHILLIP J. SHEPHERD, JUDGE
NO. 21-CI-00461

HOLLY M. JOHNSON, IN HER                          APPELLEES
OFFICIAL CAPACITY AS SECRETARY
OF THE FINANCE AND
ADMINISTRATION CABINET; AKIA
MCNEARY; CHRIS RASHEED, ON
BEHALF OF HIMSELF AND HIS
MINOR CHILD; COMMONWEALTH OF
KENTUCKY EX REL. ATTORNEY
GENERAL DANIEL CAMERON;
KATHERINE WALKER-PAYNE, ON
BEHALF OF HERSELF AND HER
MINOR CHILDREN; MICHELLE
GRIMES JONES, ON BEHALF OF
HERSELF AND HER MINOR
CHILDREN; NANCY DEATON; AND
THOMAS B. MILLER, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF

THE KENTUCKY DEPARTMENT OF
REVENUE

AND

2021-SC-0520-TG
(2021-CA-1320)

MICHELLE GRIMES JONES, ON                                    APPELLANTS
BEHALF OF HERSELF AND HER
MINOR CHILDREN; CHRIS RASHEED,
ON BEHALF OF HIMSELF AND HIS
MINOR CHILD; AND KATHERINE
WALKER-PAYNE, ON BEHALF OF
HERSELF AND HER MINOR
CHILDREN

 

ON APPEAL FROM FRANKLIN CIRCUIT COURT
V.              HON. PHILLIP J. SHEPHERD, JUDGE
NO. 21-CI-00461

HOLLY M. JOHNSON, IN HER                                    APPELLEES
OFFICIAL CAPACITY AS SECRETARY
OF THE FINANCE AND
ADMINISTRATION CABINET; AKIA
MCNEARY; COMMONWEALTH OF
KENTUCKY EX REL. ATTORNEY
GENERAL DANIEL CAMERON;
COUNCIL FOR BETTER EDUCATION,
INC.; FRANKFORT INDEPENDENT
SCHOOL BOARD; NANCY DEATON;
THOMAS B. MILLER, IN HIS OFFICIAL
CAPACITY AS COMMISSIONER OF
THE KENTUCKY DEPARTMENT OF
REVENUE; AND WARREN COUNTY
SCHOOL BOARD

AND

2021-SC-0522-TG
(2021-CA-1323)


AKIA MCNEARY AND NANCY DEATON                    APPELLANTS


                    ON APPEAL FROM FRANKLIN CIRCUIT COURT
V.                  HON. PHILLIP J. SHEPHERD, JUDGE
                    NO. 21-CI-00461


COUNCIL FOR BETTER EDUCATION,                       APPELLEES
INC.; CHRIS RASHEED, ON BEHALF
OF HIMSELF AND HIS MINOR CHILD;
COMMONWEALTH OF KENTUCKY EX
REL. ATTORNEY GENERAL DANIEL
CAMERON; FRANKFORT
INDEPENDENT SCHOOL BOARD;
HOLLY M. JOHNSON, IN HER
OFFICIAL CAPACITY AS SECRETARY
OF THE FINANCE AND
ADMINISTRATION CABINET;
KATHERINE WALKER-PAYNE, ON
BEHALF OF HERSELF AND HER
MINOR CHILDREN; MICHELLE
GRIMES JONES, ON BEHALF OF
HERSELF AND HER MINOR
CHILDREN; THOMAS B. MILLER, IN
HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE KENTUCKY
DEPARTMENT OF REVENUE; AND
WARREN COUNTY SCHOOL BOARD

**OPINION OF THE COURT BY JUSTICE HUGHES**

**<u>AFFIRMING</u>**

In 2021 the Kentucky General Assembly passed House Bill (HB) 563,[1]

creating a structure by which Kentucky taxpayers who donate to account-

_____

[1] Act of Mar. 30, 2021, ch. 167, 2021 Ky. Acts 1041.

granting organizations (AGOs) receive a nearly dollar-for-dollar tax credit against their income taxes. These AGOs allocate taxpayer contributions to education opportunity accounts (EOAs) that are set up for eligible students. Funds in the EOAs can be used for various education-related expenses but the primary focus has been their availability to defray the costs of nonpublic school tuition for eligible students. Pursuant to the statutes, the Kentucky Department of Revenue (Department) is charged with developing and overseeing the structure by which AGOs are certified, enabling those entities to then accept funds and administer the EOAs. The Department has other significant responsibilities including preapproving any potential tax credit upon taxpayer application, issuing tax credit letters, creating a website, auditing the AGOs and, notably, insuring that the annual tax credits attributable to the program do not exceed $25 million.

HB 563, codified at Kentucky Revised Statutes (KRS) 141.500-.528 and known as the "Education Opportunity Account Act" or "EOA Act," KRS 141.528, became effective on June 29, 2021, and shortly thereafter was challenged as violative of the Kentucky Constitution. The Franklin Circuit Court considered the EOA Act's constitutionality under several provisions of our Constitution and ultimately found it unconstitutional under both Section 59, the special legislation provision, and Section 184, an education provision prohibiting the raising or collecting of any sum for education "other than in common [public] schools" unless the taxation question is submitted to and approved by the voters.

Before this Court, the proponents of HB 563 urge our consideration of the importance of parental choice and recognition of the unique education needs of each child while the opponents emphasize the importance of a sound, well-funded common school system open to all children regardless of their circumstances. While these policy arguments are understandable, this Court has no role in assessing the merits of competing policy positions but must instead exercise the "judicial power of the Commonwealth" committed to it under Section 109 of the Kentucky Constitution. In short, our responsibility is to review the EOA Act to determine whether the statute complies with or contravenes our Constitution, the foundational document for all laws in Kentucky.

After a thorough review, we conclude the EOA Act violates Section 184 and, consequently, affirm the circuit court's holding that the statute is unconstitutional. With this conclusion, the remaining constitutional challenges to the EOA Act are rendered moot.

**FACTS AND PROCEDURAL HISTORY**

On March 16, 2021, the General Assembly passed HB 563 by a narrow margin, with a 48-47 vote in the House. The Governor promptly vetoed the legislation, prompting the General Assembly to override the Governor's veto on March 30, 2021. Now codified as KRS 141.500-.528, this legislation establishes the Education Opportunity Account Program. This program provides nearly dollar-for-dollar tax credits to Kentucky taxpayers for their contributions to educational nonprofit organizations known as AGOs. These

3

AGOs in turn award funds to low-income families for education expenses through EOAs. The program's stated purpose is to "give more flexibility and choices in education to Kentucky residents and to address disparities in educational options available to students." KRS 141.500.

To be eligible to obtain an EOA, students generally must be members of a family whose household earns less than 175% of the amount of household income necessary to establish eligibility for reduced price meals—approximately $85,800 for a family of four during the 2021-22 school year. Students can use EOA funds on a variety of services, including online learning programs, tutoring, extracurricular activities, computer hardware and software, standardized testing, special education therapy programs, and transportation. Students attending public and nonpublic institutions are eligible for an EOA. Notably, for students in counties with populations over 90,000 based on the 2010 United States Census, EOA funds can also be used for nonpublic school tuition. This limits nonpublic school tuition assistance to only eight counties: Boone, Campbell, Daviess, Fayette, Hardin, Jefferson, Kenton, and Warren.

The Council for Better Education, Inc. (Council), a non-profit organization of school districts and school officials dedicated to ensuring implementation of Kentucky's constitutional commitment to students and schools, and the Warren County and Frankfort Independent School Boards, as well as several parents of children (collectively Plaintiffs), challenged the constitutionality of the EOA Act, claiming it impermissibly redirects state

4

revenues to nonpublic schools. Plaintiffs named the Secretary of the Kentucky Finance and Administration Cabinet and the Commissioner of the Kentucky Department of Revenue as Defendants based on their statutorily-prescribed roles in implementing the program. The Attorney General intervened in the action on behalf of the Commonwealth. Two parents who hope to receive EOA program benefits, Akia McNeary and Nancy Deaton, were also permitted to intervene as defendants (referred to collectively with the Attorney General as Intervening Defendants).

Sections 1-4 of HB 563,[2] codified at KRS 157.350, 158.120, and 156.070, modify existing statutes to allow public school students to transfer, without penalty, from their district of residence to another public school district where they do not reside. These sections of the legislation have not been challenged and are not at issue here. Sections 5-19 of HB 563 outline how the EOA program works, eligibility, the application process for parents and AGOs, and the extensive requirements imposed on the Department to maintain and implement the EOA program.[3]

Plaintiffs filed a motion for summary judgment and argued that KRS 141.500-.528 violate Sections 3, 59, 171, 183, 184 and 186 of the Kentucky

---

[2] In its Order on Summary Judgment, the circuit court referred to these legislative provisions as Sections of HB 563. Since those sections are now codified in KRS 141.500, et seq., for clarity we refer to the provisions using the KRS citations.

[3] The last two sections of HB 563 are not at issue here. Section 20 modifies KRS 141.0205 to add the EOA tax credit to the order for credit application if a taxpayer is entitled to more than one tax credit. Section 21 amends KRS 131.190, pertaining to the responsibility of state employees to maintain confidentiality, to allow the transmission of EOA program information to the Legislative Research Commission.

Constitution. Plaintiffs also requested injunctive relief. Intervening Defendants filed cross-motions for summary judgment and the circuit court heard oral arguments. On October 8, 2021, the circuit court granted Plaintiffs' motion for summary judgment on their claims involving Sections 59 and 184 of the Kentucky Constitution but determined that issues of material fact precluded ruling on Plaintiffs' claims under the remaining constitutional sections. The circuit court highlighted that the taxpayers who "donate" to AGOs are not donating their own money to AGOs—they are taking the money they owe the state in income taxes and redirecting it to the AGOs, in lieu of paying their tax liability.

The circuit court concluded that the geographic limitations in KRS 141.504(2)(b) violate Section 59, the special legislation prohibition of the Kentucky Constitution. Specifically, the court held the singling out of a few counties with populations over 90,000 at the time of the 2010 United States Census for the lucrative benefit of tuition assistance for nonpublic schools, to the exclusion of all other counties, falls squarely within the Section 59 ban on special legislation. The court found the classification drawn by KRS 141.504(2)(b) virtually identical to the geographic classification struck down in *University of the Cumberlands v. Pennybacker*, 308 S.W.3d 668 (Ky. 2010), which limited pharmacy school tuition assistance to students who attended pharmacy schools in an Appalachian Regional Commission county. Additionally, the circuit court noted the Legislature cannot provide funding that discriminates against nonpublic school students and families based on

6

their place of residence. *Rose v. Council for Better Educ.*, 790 S.W.2d 186 (Ky. 1989). Despite Intervening Defendants' request to employ the severability statute, KRS 446.090, and make the tuition assistance provisions available statewide, the circuit court declined, having determined that these provisions are integral to the overall scheme of the statute, and severance is not possible.[4]

The circuit court also held that the EOA Act violates Section 184 of the Kentucky Constitution which provides that "no sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters." Applying the plain language of this section, the income tax credit raises money for nonpublic education and its characterization as a tax credit rather than an appropriation is immaterial. The circuit court cited *Commonwealth v. O'Harrah*, 262 S.W.2d 385, 389 (Ky. 1953), for the long-standing principle that "[i]n appraising the validity of the statute we must look through the form of the statute to the substance of what it does." Every dollar raised under the EOA program to fund the AGOs is raised by tax credits which diminish the tax revenue received to defray the necessary expenses of government.

In its October 8, 2021 order, the Franklin Circuit Court also granted the injunctive relief requested by Plaintiffs. The court order states that the

---

[4] The circuit court referenced the "razor thin" vote on final passage in the House of Representatives, 48-47. The circuit court could not presume that HB 563 would have passed without the unconstitutional limitation allowing nonpublic school tuition assistance in only eight counties, nor could it presume the bill would have passed if the benefit was extended beyond the eight counties. "[A]ny material change in the bill would have jeopardized its passage."

Department is permanently enjoined from enforcing the provisions of the EOA Act as codified at KRS 141.500-.528. Accordingly, the Department is prohibited from approving the creation or operation of any AGOs, the establishment of any EOAs, and the granting of any tax credits to fund such organizations and accounts under the legislation.

Finally, the circuit court concluded that the factual record necessary to consideration of the constitutional issues raised by Sections 3 and 171 of the Kentucky Constitution was not yet developed. Sections 3 and 171 prohibit payment of public money "to any man or set of men, except in consideration of public services," and require principles of public purpose, uniformity, and equality in levying taxes. Likewise, the court deemed the record is underdeveloped on the issues pertaining to Sections 183 and 186 of the Kentucky Constitution, which require the Kentucky General Assembly to provide for "an efficient system of common schools" that is adequately and equitably funded, and that "[a]ll funds accruing to the school fund shall be used for the maintenance of the public schools of the Commonwealth, and for no other purpose." Because the record contains no discovery, depositions, or expert testimony to establish whether the EOA Act is consistent with these constitutional requirements, the court denied summary judgment on these issues.

Within days, Intervening Defendants filed a motion to amend the circuit court's summary judgment order, and various school districts sought to intervene in the action to seek clarification on whether the circuit court's ruling

struck down Sections 1-4 of HB 563.  In a November 2, 2021 order, the circuit court explicitly stated that Sections 1-4 of the legislation are not at issue, so the motions to intervene were moot.[5]  The circuit court also reaffirmed its holding that the EOA Act violates Sections 59 and 184 of the Kentucky Constitution.  Finally, as to the remaining claims regarding other constitutional violations, the court reiterated that it was holding these claims in abeyance pending finality of the anticipated appeal.

Intervening Defendants filed a notice of appeal in the Court of Appeals on November 9, 2021.  On November 16, 2021, Plaintiffs and the Attorney General filed separate motions to transfer the appeal to this Court, citing the important constitutional questions presented and the "great and immediate public importance" of this matter.  Kentucky Rule of Civil Procedure (CR) 74.02(2).  This Court granted transfer on February 23, 2022, consolidated the actions on April 20, 2022, and following extensive briefing heard oral arguments on October 12, 2022.[6]

---

[5] Sections 1-3 of HB 563 relate to educational choice and provide amendments that require school districts to adopt nonresident student policies under which a school district shall allow the enrollment of nonresident students and the funding associated therewith.  Section 4 provides that the Kentucky Department of Education shall report to the Legislative Research Commission and the Interim Joint Committee on Education with options for ensuring the equitable transfer of education funds so that funds follow a nonresident student to their school district of enrollment.  Subsequent sections of HB 563, Sections 5-19, are the EOA Act.  *See also* n.3 regarding Sections 20-21.

[6] On August 3, 2022, the Department and the Finance and Administration Cabinet filed a statement, in lieu of submitting a brief, indicating their interest in a ruling from this Court because the implementation and administration of the EOA Act tax credits fall within the administrative functions of the Department.  They took no position on the issues presented noting that "sufficient arguments will be made by the other parties."

**ANALYSIS**

**I. KRS 141.500 et seq. (HB 563) – The Structure and Operation of the EOA Tax Credit Program**

As noted, the EOA Act authorizes AGOs, which essentially serve as intermediary organizations to facilitate funding various educational expenses of eligible students.  An organization seeking to become an AGO must be certified by the Department and renew its certification annually.  KRS 141.510.  To apply for certification, an AGO must submit proof of its incorporated non-profit status and a description of how the AGO plans to function, including its application process, establishment and management of EOAs, and process for approving educational service providers.  *Id.*  To renew its certification, an AGO must submit its IRS forms and an annual report that details various aspects of the AGO's operations, including lists of students receiving EOA funds, accounting details pertaining to funds received and distributed, and educational service providers.  KRS 141.510(3).  The Department must issue initial certifications within sixty days of receiving the application and renew certifications within thirty days of receiving a renewal application.  KRS 141.510(4).

KRS 141.506 requires a taxpayer-parent to apply to an AGO to establish an EOA for an eligible student.  Each AGO is tasked with creating a uniform process for determining the amount of funds allocated to each eligible student's EOA with prescribed limitations pertaining to the amount of funds permissible in each EOA, and the expenses covered by an EOA.  KRS 141.504.  Qualifying expenses include public school tuition, tutoring services, textbooks and

instructional materials, technological devices, uniforms, testing fees for standardized assessments, summer and after-school education programs, therapies provided by a licensed professional, and tuition for dual credit courses. KRS 141.504(2)(a). In addition to the variety of education-related expenses covered by EOAs, students who reside in eight counties with a population of 90,000 or more, as determined by the 2010 United States Census, can use funds received through the EOA program for tuition and fees to attend nonpublic schools. KRS 141.504(2)(b).

By tying this classification to the 2010 Census, the General Assembly limited the students eligible for nonpublic school tuition payments to residents in Boone, Campbell, Daviess, Fayette, Hardin, Jefferson, Kenton, and Warren Counties. The stated justification for this provision is that "students in these counties have access to substantial existing nonpublic school infrastructure and there is capacity in these counties to either grow existing tuition assistance programs or form new nonprofits from existing networks that can provide tuition assistance to students over the course of the pilot program." KRS 141.504(2)(b). Funds allocated to an EOA do not constitute taxable income to the parent or the EOA student. KRS 141.504(5).

The EOA Act imposes numerous requirements on the Department. To administer the tax credits to eligible taxpayers, the Department is required to create the tax credit application form, the forms used to notify the taxpayer and an AGO of preapproval or denial of the tax credit, and the educational materials distributed by AGOs. KRS 141.514(1)(a). The Department must also

11

create a website listing the amount of total credit pending verification, credit allocated to date, and the remaining credit available to taxpayers making contributions to AGOs. KRS 141.514(1)(b). In addition, the Department must notify the taxpayer and the AGO of the amount of credit allocated to the taxpayer upon certification that the contribution has been made. KRS 141.514(1)(c). By January 1 of each year, the Department must publish on its website a list of organizations approved to perform independent financial analyses of parents' demonstrated financial needs (which is required to determine eligibility pursuant to KRS 141.504(1)(a)1), a list of AGOs, and an overall annual report that aggregates the information obtained from annual reports submitted by AGOs.

The Department may audit an AGO and, in the event the Department determines that the AGO violated any section of the EOA Act, must notify the AGO of its noncompliance. KRS 141.516(1)-(2). If the AGO fails to remedy its violation, the Department can revoke the AGO's certification to participate in the EOA program. KRS 141.516(2)(c).

Prior to making a contribution to an AGO, KRS 141.508 requires a taxpayer to apply for preapproval of the tax credit with the Department. The application must include the total amount of proposed contributions, the name of the AGO that will receive the contributions, and the year or years in which the contributions must be made, as well as whether the contributions will be cash or marketable securities. KRS 141.508(1). The Department is tasked with prescribing the manner of this preapproval process and is required to

12

approve all preliminary approval applications within ten business days of receipt. KRS 141.508(2). If no amount of tax credit remains for allocation based on the total annual tax credit cap of $25 million (KRS 141.522(3)(b)), the Department must notify the taxpayer and the AGO that the application will be held in abeyance and will be funded on a first-come, first-served basis (if other taxpayers preapproved do not make their contributions and that "frees up" credit) or will be denied if all preapproved contributions are timely made. KRS 141.508(3).

There are time constraints imposed on eligible taxpayers making contributions. The taxpayer must make the preapproved contribution to the AGO no later than the earlier of fifteen business days following the date of the Department's preapproval notice, or June 30 of the fiscal year of the approval.[7] KRS 141.508(4)(a). An AGO must certify to the Department the name of the taxpayer, the amount of contribution made, and the date of contribution within ten days of receipt. KRS 141.508(5)(a). Upon receipt of certification that the contribution was made, or the expiration of ten days without certification, whichever occurs first, the Department shall modify the amount of tax credit pending certification, the amount of credit allocated to taxpayers, and the remaining tax credit available for allocation. KRS 141.508(5)(b).

---

[7] If the preapproved contribution is marketable securities, the AGO is required to monetize the securities within five business days and notify the Department within ten business days of the monetization of the securities. KRS 141.508(4)(b). The taxpayer must supplement the contribution with cash if the monetized value of the securities is less than the preapproved contribution amount. *Id.*

These nonrefundable, nontransferable tax credits for contributions made to one or more AGOs during taxable years beginning on or after January 1, 2021, but before January 1, 2026, are permitted against the taxes imposed on individuals (KRS 141.020), corporations (KRS 141.040), and limited liability entities (KRS 141.0401). KRS 141.522. If a taxpayer is entitled to more than one tax credit, they must follow the order for credit application as prescribed by KRS 141.0205. The aggregate value of total annual tax credit awarded under the EOA program shall not exceed $25 million. KRS 141.522(2). The EOA program offers a nearly dollar-for-dollar tax credit incentive to eligible taxpayers, awarding a credit per taxable year limited to the lesser of 95% of the total contributions made to an AGO, or $1 million. KRS 141.522(3). However, if the taxpayer elects to pledge a contribution for multiple taxable years, not to exceed four years, and the amount of contributions for each of the multiple tax years is equal to or exceeds the amount of contributions made to the AGO in the taxable year within which the pledge was made, the amount of allowable credit increases to 97%. KRS 141.522(4).[8] If a tax credit awarded under KRS 141.522 is not used by the taxpayer in the current taxable year, it may be carried forward for up to five succeeding taxable years until the tax credit has been utilized. KRS 141.522(5). The EOA program tax credits are awarded on a first-come, first-served basis each fiscal year until the annual tax credit cap of

---

[8] If the taxpayer does not remit the pledged amount of contributions during any taxable year during which a multi-year pledge is made, the taxpayer shall repay the portion of the credit resulting from the increase. KRS 141.522(4)(c).

14

$25 million is reached.  KRS 141.522(6).  Again, the Department is tasked with monitoring credits to assure the $25 million annual cap is not exceeded.  The program is "effective for taxable years beginning on or after January 1, 2021, but before January 1, 2026," KRS 141.522(1), which results in potential credits of $125 million over five years, the currently authorized life of what is described as a pilot program.

The Department is also tasked with providing significant information to the Interim Joint Committee on Appropriations and Revenue no later than November 1 of each year in which tax credits permitted by KRS 141.522 are taken.  KRS 141.524.  The Department must compile all information in each annual report filed by AGOs, including the number and total amount of EOAs awarded to EOA students by household income ranges at intervals of $5,000; the number and total EOAs awarded to students who are in foster care, who previously received an EOA, or are members of a household in which a student has previously received an EOA; and "any other information that may be necessary to assist the members of the General Assembly in determining that the purposes of this tax credit are being fulfilled."  *Id.*

## II. Section 184 and the Prohibition on Raising or Collecting Funds for Nonpublic Schools

Although Plaintiffs have lodged several constitutional challenges to the EOA Act and the circuit court addressed two of them, we find the Section 184 challenge dispositive.  As we noted in *Pennybacker*, 308 S.W.3d at 676, the delegates to the 1890 Kentucky Constitutional Convention devoted two days to debating the "Education" portion of our current Kentucky Constitution set

15

forth in Sections 183-189. Section 183 commands that the General Assembly "shall, by appropriate legislation, provide for an efficient system of common schools throughout the State." The next section, Section 184, addresses the funding of those common schools in three sentences and a closing proviso.[9] The second and third sentences, which are the real thrust of Section 184 and control our disposition of this case, state:

> The interest and dividends of said [common school] fund, together with any sum which may be produced by taxation or otherwise for purposes of common school education, shall be appropriated to the common schools, and to no other purpose. **No sum shall be raised or collected for education other than in common schools until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such taxation. . . .**

(Emphasis added.) The circuit court concluded that the EOA Act "raises a sum of money for private education outside the system of common schools" and thus violates Section 184.

We recognize that "acts of the legislature carry a strong presumption of constitutionality," *Wynn v. Ibold, Inc.*, 969 S.W.2d 695, 696 (Ky. 1998), but that

---

[9] The first sentence identifies the then-existing bonds and stocks which comprised the common school fund in 1890:

> The bond of the Commonwealth issued in favor of the Board of Education for the sum of one million three hundred and twenty-seven thousand dollars shall constitute one bond of the Commonwealth in favor of the Board of Education, and this bond and the seventy-three thousand five hundred dollars of the stock in the Bank of Kentucky, held by the Board of Education, and its proceeds, shall be held inviolate for the purpose of sustaining the system of common schools.

The closing proviso provides for the continuation of an existing tax for "the Agricultural and Mechanical College," now the University of Kentucky: "Provided, The tax now imposed for educational purposes, and for the endowment and maintenance of the Agricultural and Mechanical College, shall remain until changed by law."

16

presumption does not relieve us of the responsibility to take a clear-eyed look at legislation to determine whether it complies with our Constitution.  Having examined the detailed structure created by the Legislature to support AGOs and EOA accounts and considered the manner in which income taxes are assessed and EOA tax credits operate, we are compelled to agree that the EOA Act violates the plain language of Section 184.  Simply stated, it puts the Commonwealth in the business of raising "sum[s] . . . for education other than in common schools."

In one of the earliest citations to Section 184, *Brown v. Board of Education of Newport*, 57 S.W. 612, 613 (Ky. 1900), this Court's predecessor acknowledged the clear "intention . . . to prohibit the collection of any taxes to any extent for educational purposes other than common schools."[10]  Later in *Pollitt v. Lewis*, 108 S.W.2d 671, 672 (Ky. 1937), the Court noted "it is equally clear that the framers of the Constitution must have had in mind that they were placing a limitation upon legislative power **to expend money** for education other than in common schools."  (Emphasis added.)

Forty years ago, in *Fannin v. Williams*, 655 S.W.2d 480 (Ky. 1983), this Court applied Section 184 to strike down a statute supplying textbooks to children in Kentucky's nonpublic schools.  The statute tried to avoid constitutional infirmity by having the state department of libraries rather than

---

[10] As we observed in *Pennybacker*, 308 S.W.3d at 676 n.4, "[a] 'common school' is now defined in KRS 158.030 as 'an elementary or secondary school of the state supported in whole or in part by public taxation.'"  The term has always been understood to encompass those schools.

17

the department of education purchase the books; having the books distributed to pupils even though the administrators of the nonpublic schools were responsible for the books' custody, use and return; and appropriating funds directly to the department of libraries rather than using the common school fund. *Id.* at 482. As we stated then: "The statute in question seeks to evade constitutional limitations by a series of devices, which do more to point up the constitutional problems than to avoid them." *Id.* The Court succinctly and colorfully concluded:

> In sum, the Kentucky Constitution contemplates that public funds shall be expended for public education. The Commonwealth is obliged to furnish every child in this state an education in the public schools, but it is constitutionally proscribed from providing aid to furnish a private education. We cannot sell the people of Kentucky a mule and call it a horse, even if we believe the public needs a mule.

*Id.* at 484 (citation omitted). The *Fannin* Court did note that under Section 184 a majority of legal voters can approve the expenditure of public funds "other than in common schools." *Id.* "If the legislature thinks the people of Kentucky want this change, [it] should place the matter on the ballot." *Id.*[11]

---

[11] The Attorney General criticizes *Fannin* and urges us to overrule it, leaning heavily on two cases as indicative of the proper application of Section 184 and as illustrative of the constitutionality of the EOA Act. In *Hodgkin v. Board for Louisville & Jefferson County Children's Home*, 242 S.W.2d 1008 (Ky. 1951), the Court upheld an appropriation to a **public** institution, essentially what was then known as a reform school, operated by Louisville and Jefferson County. In that Court's words, "the Act squarely presents the question as to whether a school operated by any public authority other than a regular school district may constitutionally receive a portion of the Common School Fund." *Id.* at 1009. Unsurprisingly, the Court found no bar to appropriating state funds to an institution operated by local government units for the public purpose of education, benefitting the state. In *Butler v. United Cerebral Palsy of Northern Ky., Inc.*, 352 S.W.2d 203 (Ky. 1961), then-Judge Palmore, writing for the Court, noted that the legislation at issue pertained to funding schools for "exceptional children," an undefined term. From the text and record, he found the law "covers

18

The EOA Act goes to great lengths, well beyond those in *Fannin*, to avoid constitutional infirmity, but is similarly unsuccessful when we "look through the form of the statute to the substance of what it does." *O'Harrah*, 262 S.W.2d at 389. A tax credit is by definition a means of reducing one's tax liability to the state (or the federal government as the case may be). BLACK'S LAW DICTIONARY (11th ed. 2019) defines "tax credit" as "[a]n amount subtracted directly from one's tax liability, dollar for dollar, as opposed to a deduction from gross income."[12] So Kentucky taxpayers who participate in the EOA program get essentially dollar-for-dollar credit (generally 95%) against the income taxes they would otherwise owe the Commonwealth because they have contributed to an AGO.

The state-accredited and state-monitored AGOs administer EOAs which allocate those contributed monies to nonpublic school tuition or perhaps other

those children within this state who would be entitled to attend its common schools, but **for whom the school board, in its reasonable discretion, concedes that the program and facilities of a particular school district are thus far inadequate."** *Id.* at 205 (emphasis added). After referencing the Kentucky Industries for the Blind, Mayo State Vocational School and Northern Kentucky State Vocational School as institutions outside the common school system that could be supported or operated by the state, the Court concluded: "We do not believe it was the intention of the delegates in adopting Const. §§ 184 and 186 to deny forever the possibility of special educational assistance to those who by no choice of their own are unsuited to the standard program and facilities of the common school system." *Id.* at 207. So *Hodgkin* actually involved funding a public institution and *Butler* addressed exceptional children, the most obvious examples being the "physically or mentally handicapped," *id.* at 205, who the local school board conceded were unsuited to the regular public school. Neither provides precedent for concluding HB 563 complies with Section 184.

[12] By contrast, a tax deduction is "[a]n amount subtracted from gross income when calculating adjusted gross income, or from adjusted gross income when calculating taxable income." BLACK'S LAW DICTIONARY at 519.

19

allowed personal educational expenditures. The EOAs must be established by a "parent" on behalf of an "eligible student." KRS 141.506. Under KRS 141.502(11): "[p]arent] means a biological or adoptive parent, legal guardian, custodian, or other person with legal authority to act on behalf of an EOA student." "Eligible student" is defined as a Kentucky student in a household whose annual income does not exceed 175% of household income necessary to establish eligibility for reduced meals; who has previously received an EOA; or who is a member of the household of a student who currently has an AGO. KRS 141.502(6). Notably, an "eligible taxpayer" who can qualify for an EOA tax credit is not limited to parents but includes "an individual or business, including but not limited to a corporation, S corporation, partnership, limited liability company, or sole proprietorship subject to tax imposed under KRS 141.020, 141.040, or 141.0401." KRS 141.502(7).

These provisions make abundantly clear the Legislature's intent to offer this tax credit to a wide array of Kentucky taxpayers, with taxpayers of means, whether individuals or business entities, being able to contribute up to $1 million per year to an AGO, KRS 141.522(3), in "the form of cash or marketable securities," KRS 141.508(1). So while the family of an eligible student for whom an EOA has been created may contribute their hard-earned dollars,[13]

---

[13] A taxpayer is required to make the entire preapproved contribution within fifteen business days following the date of the Department's preapproval notice, or June 30 of the fiscal year of the preapproval, whichever falls earlier. KRS 141.508(4)(a). How parents of an eligible student could qualify given their limited financial means is unclear. Logic dictates that the taxpayers who seek the tax credit are choosing to use the tax monies they otherwise owe the Commonwealth to fund EOAs (and nonpublic schools) rather than remitting that money to the state.

20

the statute creates a system whereby **any Kentucky taxpayers** who want to fund EOAs can send their money to an AGO for use at nonpublic schools instead of paying a comparable amount which they owe in Kentucky income taxes. This lucrative tax benefit incentivizes Kentucky taxpayers to contribute to AGOs. If the taxpayer is an individual and receives a regular paycheck with estimated state income tax liability withheld (as Kentucky employers are required to do by KRS 141.310), then realization of the benefit derived from the EOA credit will be in the form of a tax refund check sent to the taxpayer after they file the return on which they claim the EOA tax credit. Similarly, if other taxpayers have made quarterly estimated payments, those payments would be refunded to the extent their payments exceed their liability after claiming the EOA tax credit.

The EOA tax credit is made possible by the previously-described elaborate structure within the Department, which oversees vetting, accrediting and auditing AGOs, as well as preapproving individual EOA credit requests and monitoring the Commonwealth's fiscal exposure so that the total EOA credits annually do not exceed $25 million. The substance of this bill is obvious. The Commonwealth may not be sending tax revenues directly to fund nonpublic school tuition (or other nonpublic school costs) but it most assuredly is raising[14] a "sum . . . for education other than in common schools" by forgiving a taxpayer's tax liability to the Commonwealth to the extent the taxpayer has

---

[14] "Raise" is defined in BLACK'S LAW DICTIONARY, in part, as "to gather or collect."

contributed a preapproved amount to an AGO to fund an EOA account. In simple terms, taxpayers, whether individuals or business entities, who otherwise owe state income tax can instead send that money to nonpublic schools via an AGO, reducing their tax liability and the state coffers by a corresponding amount. As the circuit court correctly observed, the legislation "allows this favored group of taxpayers to re-direct the income taxes they owe the state to private AGOs, and thereby eliminate their income tax liability." This diversion of owed tax liability monies is made possible by the significant amount of state resources employed to create and operate the EOA program.[15]

The Attorney General insists that Section 184 only prohibits (1) using tax money allocated to the Common School Fund for other purposes and (2) imposing "a new tax to benefit education outside the common-school system without a majority vote." Reading the section in that narrow fashion, he urges that it does not otherwise prohibit the Legislature from aiding non-common schools and asks us to hold "that Section 184 does not prohibit the General Assembly from decreasing a Kentuckian's tax burden for having donated to a nonprofit organization that then helps lower-income Kentucky students pursue the education best suited to them." We respectfully decline to construe the Constitution in a way that would avoid its plain meaning. Taxpayers who owe Kentucky income tax owe real dollars to the state and when they are not

---

[15] The Department's statutorily-mandated obligations are significant and have no precedent that we can discern in terms of using state funds and employees to build and staff a program that benefits nonpublic entities.

required to pay those real dollars in the first instance or have them refunded because an EOA tax credit reduces or eliminates their tax bill, the public treasury is diminished and the Commonwealth and other taxpayers must subsidize that taxpayer's personal choice to send money to an AGO for use at nonpublic schools. In the language of Section 184, the EOA program causes "sum[s]" to be "raised" for "education other than in common schools." And, significantly, those sums are being raised through an elaborate structure, constructed and administered by Department employees paid with tax dollars. To conclude the EOA Act does not violate Section 184 would require us to ignore "the substance of what [the statute] does." *O'Harrah*, 262 S.W.2d at 389.

The Attorney General further insists that the "raised or collected" language in Section 184 must be read with the remainder of that sentence, i.e., "until the question of taxation is submitted to the legal voters, and the majority of the votes cast at said election shall be in favor of such taxation." We agree, however, we decline to read that language as addressing only imposition of a new tax. Whether substantial tax credits eliminating or dramatically reducing a taxpayer's debt to the state should be available to fund nonpublic schools is a "question of taxation." As the *Fannin* Court stated, "if the legislature thinks the people of Kentucky want this change, [it] should place the matter on the ballot." 655 S.W.2d at 484.

Equally unavailing is the Attorney General's argument that "HB 563 only affects private funds that never make it to the State Treasury." We disagree.

23

The money at issue cannot be characterized as simply private funds, rather it represents the tax liability that the taxpayer would otherwise owe but will have forgiven entirely or reduced. Moreover, in reality, through withholding on the taxpayer's paycheck or the taxpayer's declarations of estimated income tax liability those funds likely do make it to the State Treasury and are then refunded. Regardless, the funds at issue are sums legally owed to the Commonwealth of Kentucky and subject to collection for public use including allocation to the Department of Education for primary and secondary education but for the unconstitutional EOA Act which reallocates them to fund nonpublic school tuition.

In an effort to convince this Court to hold the EOA Act passes muster under the Kentucky Constitution, Intervening Defendants also suggest that any holding to the contrary would imperil the charitable donations that Kentucky taxpayers make to nonpublic institutions offering primary and secondary education. Two facts cause this argument to fail: charitable deductions have a relatively *de minimis* effect on state income tax collections vis-à-vis an EOA tax credit and, more importantly, the Commonwealth is not involved in any way in raising or collecting those funds through an elaborate structure created by the Legislature and overseen by the Department.

As to the first point, we noted above that a tax credit results in a virtually dollar-for-dollar reduction in the taxpayer's income tax liability while a tax deduction simply reduces that taxpayer's income by a comparable amount, resulting in savings on each dollar contributed at the taxpayer's tax rate.

24

Given the 95% EOA tax credit allowed under KRS 141.522(3),[16] a taxpayer who directs $1,000 to an AGO saves $950 in income tax and reduces the Commonwealth's tax collections by a corresponding amount.[17]  By contrast, a taxpayer who donates $1,000 to a private or parochial primary or secondary school and claims a charitable contribution deduction reduces their income by a corresponding amount and generally experiences tax savings at the applicable tax rate.  Pursuant to KRS 141.020(2)(d), "[f]or taxable years beginning on or after January 1, 2018, but before January 1, 2023, the tax rate shall be five percent (5%) of net income."  Consequently, the $1,000 charitable contribution results, at most, in the taxpayer saving $50 in taxes.

But more importantly, the features that cause the EOA Act and corresponding tax credit to violate Section 184 of the Kentucky Constitution are not present in a charitable tax deduction.  In the latter, the taxpayer unilaterally decides to write a check or donate an asset directly to a nonpublic school.  The Commonwealth plays no role in the transaction.  The school acknowledges the gift and the taxpayer takes a charitable deduction on their tax return.  In contrast to the Commonwealth's passive role in the case of a charitable deduction, the EOA program is a state-created structure—the state

---

[16] As previously noted, the tax credit increases to 97% in the case of a multi-year pledge in accordance with KRS 141.522(4)(b).

[17] The portion of a taxpayer's contribution to an AGO that is not offset by the EOA tax credit, i.e., 5%, can be claimed as a deduction for both federal and state tax purposes.  For example, if a taxpayer contributes $500,000 to an AGO, they are entitled to a $475,000 tax credit.  The remaining $25,000 is subject to the allowable deduction for charitable contributions.

25

dedicates state employees to constructing and overseeing a program whereby private AGOs are created, accredited and audited; taxpayers apply to the Department in advance for preapproved credit; parents apply for EOAs at the AGOs which would not exist but for the state accreditation system; and the Department is involved day-in and day-out in accrediting and overseeing AGOs, preapproving donations to AGOs, issuing tax credit letters to taxpayers, monitoring AGO business operations and reporting to the General Assembly regarding the overall program. The EOA program would not exist but for this elaborate, state-supported structure, which raises sums "for education other than in common schools" in violation of Section 184 of the Kentucky Constitution. Nothing about the charitable deduction allowance remotely approaches the elaborately crafted EOA program and corresponding tax credit.

Even against "a strong presumption of constitutionality," *Wynn,* 969 S.W.2d at 696, this Court is responsible for assessing statutes based on the directives in our Constitution. After careful review, we cannot avoid the conclusion that the EOA Act violates the plain language of Section 184.

### III. Inapplicability of Precedent from Other Jurisdictions Without Comparable State Constitution Provisions

Intervening Defendants rely on cases from other jurisdictions as support for their view that the EOA Act is constitutional. In fact, the programs in those states are substantially different from the EOA program. More to the point, those other jurisdictions do not have constitutional provisions regarding education that are comparable to Section 184 of the Kentucky Constitution and that alone renders their cited cases unpersuasive.

26

For example, the Alabama Accountability Act of 2013 (AAA) was enacted to provide educational flexibility and state accountability for students in failing schools, defined as public K-12 schools labeled as persistently low-performing by the Department of Education. Ala. Code § 16-6D-4(5). The AAA grants two types of income tax credits: (1) a tax credit to the parent of a student enrolled in or assigned to attend a failing school to help offset the cost of transferring the student to a nonfailing public school or nonpublic school, equal to the lesser of 80 percent of the average state cost of attendance for public K-12 school or actual cost of attending a nonfailing public or nonpublic school (Ala. Code § 16-6D-8(a)); and (2) a tax credit to individual taxpayers equal to the total contributions made to Scholarship Granting Organizations (SGOs) during the taxable year up to 50% of the taxpayer's tax liability (not to exceed $7,500 per taxpayer), and a tax credit to corporate taxpayers of 50% of their total contributions to SGOs up to 50% of the taxpayer's tax liability. 2013 Alabama Laws Act 2013-64 (H.B. 84).[18] The AAA of 2013 imposes an aggregate tax credit cap of $25 million annually. Thus, while Alabama offers a unique benefit for parents of students in public schools recognized as "failing,"

---

[18] The AAA, as enacted when *Magee v. Boyd,* 175 So. 3d 79 (Ala. 2015), discussed below, was rendered, included the $7,500 limit for individual taxpayers and restriction regarding 50% of the individual or corporate tax liability. The AAA, as currently enacted, allows an individual tax credit of 100% of the contributions to SGOs, up to 100% of the tax liability of the taxpayer (not to exceed $100,000), and a corporate tax credit equal to 100% of the total contributions to SGOs, up to 100% of the tax liability of the taxpayer. *See* Ala. Code § 16-6D-9.

taxpayers that make contributions to SGOs can avoid only 50% of their tax liability.

Plaintiffs in *Magee v. Boyd,* 175 So. 3d 79, 91 (Ala. 2015), challenged the legality of the legislation, arguing, in part, that the AAA appropriated funds from the Educational Trust Fund (created by tax revenues and used to support and maintain public education in Alabama) to reimburse tuition and fees to nonpublic schools in violation of Article IV, Section 73 of the Alabama Constitution. That section provides that "No appropriation shall be made to any charitable or educational institution not under the absolute control of the state . . . except by a vote of two-thirds of all members elected to each house." The plaintiffs contended the credits have the practical effect of being an appropriation of public funds to nonpublic schools because the tax credits prevented Alabama from collecting tax revenues that it would have otherwise been entitled to collect. *Id.* at 121.

The Alabama Supreme Court differentiated tax credits from appropriations and reasoned that the tax credits available to parents are paid to parents and not educational institutions. *Id.* at 124. Likewise, in granting the individual and corporate taxpayer credits for contributions to SGOs "no money is set aside or specified from the public revenue or treasury to be applied to a charitable or educational institution."[19] *Id.* Plainly, Alabama's

---

[19] Plaintiffs also argued unsuccessfully that the AAA provides a tax credit in violation of Alabama Constitution Article XI, Section 211.02, which provides that income taxes shall be earmarked for placement in the ETF and are "to be used for the payment of public school teachers salaries only." *Id.* at 91.

28

Constitution does not contain a provision comparable to Kentucky Constitution Section 184 prohibiting raising or collecting funds for nonpublic schools. The *Magee* court's focus on the distinction between a tax credit and appropriation, even if persuasive,[20] is irrelevant to our task of assessing the EOA Act in light of Section 184.

In *Kotterman v. Killian*, 972 P.2d 606, 610 (Ariz. 1999), the Arizona Supreme Court rejected similar constitutional challenges to an Arizona educational tax credit program that allowed up to $500 in tax credits[21] for taxpayers who made contributions to school-tuition organizations that, in turn, used the contributions to offer scholarships for students to attend nongovernmental schools. Arizona Constitution Article IX, Section 10, prohibits the appropriation of public money or property for private schools and

---

[20] Although whether the EOA is an appropriation measure is not the issue in this case, we note the amicus brief filed by The Kentucky Center for Economic Policy and three individuals points out that the EOA is for all intents and purposes "the functional equivalent" of a direct spending program (appropriation).

> The funds raised for the program are, in all practical respects, generated as tax revenues of the Commonwealth. And the expenditures for the EOA program are, in all practical respects, expenditures of state tax revenues. Any distinctions between this program and an analogous program expressly appropriating state tax revenues to the AGOs are entirely nominal.

The amicus focuses on the fact that the exceptionally generous tax benefits " cover virtually the entire costs of the taxpayers' expenditures"; the program "is designed and structured by the state government"; and it is "not an open-ended entitlement program" but is authorized only to an annual cap ($25 million) and for a limited period of time (five years). Thus, even if the issue before us were reframed (incorrectly) to focus on whether state funds are being appropriated this Court would be required to analyze the EOA by looking carefully at what it actually does instead of simply saying, as some courts have, that a tax credit is not an appropriation.

[21] The tax credits under the Arizona educational tax credit program increased yearly based on inflation. For example, in tax year 2021 the credit was $611 for single filers and in 2022 it is $623 for single filers.

Article II, Section 12 provides that no public money or property shall be appropriated to any religious instruction. Much like the *Magee* court, the *Kotterman* court reasoned that tax credits were not appropriations and rejected the argument that the tax credits are public funds, emphasizing that the money never enters the state's control. *Id.* at 618.[22]

The tax credits offered under the Alabama and Arizona programs are *de minimis* compared to the significant credits—up to $1 million per taxpayer per year—available to individual or business entity taxpayers under the Kentucky EOA Act. More importantly, a proscription on appropriating state funds is distinct from a proscription on raising or collecting any "sum" for a prohibited purpose. Section 184 of the Kentucky Constitution pertains not just to "public funds" or "appropriations" but any "sums" that are "raised or collected for education other than in common schools." This simple but expansive language chosen by the drafters of our Kentucky Constitution avoids the need to

---

[22] *See also Gaddy v. Georgia Dep't of Revenue*, 802 S.E.2d 225, 227-28 (Ga. 2017) (the Georgia Supreme Court discussed the distinction between credits and appropriations after taxpayers challenged the constitutionality of a tax credit program allowing individuals and businesses to donate to non-profit scholarship organizations, that in turn distribute the funds as scholarships or tuition grants for private schools. The Georgia Constitution only prohibits taking money "from the public treasury" to fund certain private schools. Art. I, §2, Par. VII. The court ultimately dismissed the constitutional challenge because the Plaintiffs lacked standing. *Id.* at 232); *Toney v. Bower,* 744 N.E.2d 351 (Ill. App. 2001) (an Illinois intermediary court held that tax credits awarded as part of an educational program were not appropriations. The Illinois Constitution prohibits appropriating or paying from public funds to support schools controlled by churches or sectarian denominations. Article 10, § 3.); *McCall v. Scott,* 199 So. 3d 359, 370-71 (Fla. Dist. Ct. App. 2016) (Florida appellate court reasoned that "the authorization of tax credits . . . involve[s] no appropriation from the public treasury." The court ultimately held that Plaintiffs lacked standing to bring the constitutional challenges.).

30

determine what exactly is a "public fund" or "appropriation" and instead focuses on the actions of those acting on behalf of the Commonwealth, namely are they raising or collecting sums for nonpublic schools. Under the EOA Act they most definitely are and, consequently, the Act violates Section 184.

## CONCLUSION

The Education Opportunity Account Act violates the proscription in Section 184 of the Kentucky Constitution on the raising or collecting of "sum[s]" for "education other than in common schools." Accordingly, we affirm the Franklin Circuit Court's Opinion and Order on those grounds.

All sitting. All concur.


COUNSEL FOR COMMONWEALTH OF
KENTUCKY EX REL. ATTORNEY GENERAL
DANIEL CAMERON:

Matthew F. Kuhn
Alexander Y. Magera
Office of the Solicitor General


COUNSEL FOR HOLLY M. JOHNSON,
IN HER OFFICIAL CAPACITY AS
SECRETARY OF THE FINANCE AND
ADMINISTRATION CABINET; AND THOMAS B.
MILLER, IN HIS OFFICIAL CAPACITY AS
COMMISSIONER OF THE KENTUCKY
DEPARTMENT OF REVENUE:

Brian C. Thomas
William Robert Long, Jr.
Finance & Administration Cabinet

Bethany Atkins Rice
Office of Legal Services for Revenue
Cabinet

COUNSEL FOR COUNCIL FOR
BETTER EDUCATION, INC.; FRANKFORT
INDEPENDENT SCHOOL BOARD; AND
WARREN COUNTY SCHOOL BOARD:

Byron E. Leet
Virginia Hamilton Snell
Sean Gregory Williamson
Mitzi D. Wyrick
Wyatt Tarrant & Combs, LLP

COUNSEL FOR NANCY DEATON
AND AKIA MCNEARY:

Matthew Daniel Doane
Doane & Elliott, P.S.C.

Joshua A. House
Benjamin A. Field
Michael Bindas
Institute for Justice

COUNSEL FOR MICHELLE GRIMES
JONES, ON BEHALF OF HERSELF AND
HER MINOR CHILDREN; CHRIS
RASHEED, ON BEHALF OF HIMSELF
AND HIS MINOR CHILD; AND KATHERINE
WALKER-PAYNE, ON BEHALF OF HERSELF
AND HER MINOR CHILDREN:

Jeffrey S. Walther
John K. Wood
Walther, Gay & Mack, PLC

Kristen Hollar
Alice O'Brien
National Education Association

COUNSEL FOR THE BOARD OF
EDUCATION OF THE AUGUSTA
INDEPENDENT SCHOOL DISTRICT;
THE BOARD OF EDUCATION OF
THE BOWLING GREEN INDEPENDENT
SCHOOL DISTRICT; THE BOARD
OF EDUCATION OF THE CORBIN
INDEPENDENT SCHOOL DISTRICT;
THE BOARD OF EDUCATION OF THE
PAINTSVILLE INDEPENDENT SCHOOL
DISTRICT; THE BOARD OF EDUCATION
OF THE PINEVILLE INDEPENDENT
SCHOOL DISTRICT; AND THE BOARD OF
EDUCATION OF THE RACELAND
WORTHINGTON INDEPENDENT SCHOOL
DISTRICT:

Timothy Crawford
Regina A. Jackson
Michael A. Owsley
Lindsay Tate Ratliff Porter
English, Lucas, Priest & Owsley

COUNSEL FOR AMICI CURIAE,
AMERICAN FEDERATION OF
TEACHERS; KENTUCKY CONFERENCE
OF THE NAACP; PASTORS FOR
CHILDREN; PASTORS FOR KENTUCKY
CHILDREN; PUBLIC FUNDS PUBLIC
SCHOOLS AND SOUTHERN
EDUCATION FOUNDATION:

Bethany A. Breetz
Stites & Harbison, PLLC

Wendy Lecker
Jessica Levin
Education Law Center

COUNSEL FOR AMICI CURIAE,
JENNIFER BIRD-POLLAN;
PETER ENRICH; KENTUCKY CENTER
FOR ECONOMIC POLICY; AND
DARIEN SHANSKE:

Peter Enrich
Northeastern University School of Law

Pamela Thomas
Kentucky Center for Economic Policy

COUNSEL FOR AMICUS CURIAE, THE
BOARD OF EDUCATION OF FAYETTE
COUNTY PUBLIC SCHOOLS:

Joshua M. Salsburey
Donald C. Morgan
Sturgill, Turner, Barker & Moloney, PLLC

COUNSEL FOR AMICUS CURIAE
EDCHOICE KENTUCKY:

Philip D. Williamson
Taft Stettinius & Hollister LLP

John A. Meiser
Notre Dame Law School Religious Liberty Clinic